Nicholas S. Plank v. Commissioner.
Nicholas S. Plank v. Commissioner
Docket No. 13358.
United States Tax Court
1948 Tax Ct. Memo LEXIS 33; 7 T.C.M. (CCH) 871; T.C.M. (RIA) 48240; November 19, 1948
*33 Realff Ottesen, Esq., and Henry R. Ottesen, Esq., 910 Davenport Bank Bldg., Davenport, Ia., for the petitioner. William B. Springer, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in petitioner's income tax liability for the calendar year 1943 in the amount of $1,237.50. The question is presented as to whether or not the petitioner could properly return as a long term capital gain profits received from the sale of unimproved lots during the taxable year. The Commissioner adjusted his return in this respect and determined that the profits from these sales were ordinary income. Findings of Fact The parties have filed a stipulation of fact herein which is adopted as submitted. Petitioner resides in Davenport, Iowa, and he filed his income tax returns for 1942 and 1943 with the collector of internal revenue for the district of Iowa. In 1943 petitioner was approximately 75 years old and his wife 66 years of age. For 45 years prior to 1943 he had conducted a jewelry business and for at least 33 years of that time his wife had assisted him in that business. During and prior to the *34 taxable year involved he had devoted approximately eight hours a day to the jewelry business, where he had from five to seven employees. The "total receipts" of petitioner for 1942 and 1943 were $113,582.60 and $143,261.33, respectively. These receipts included returns from rental property, the exact amount of which is not shown. During 1943 petitioner claimed depreciation on six rental properties in the total amount of $829.50. On February 1, 1943, petitioner purchased a 24-acre tract of unimproved land on Brady Street Road north of the city of Davenport, Iowa, but within the city limits. Brady Street Road was paved. Petitioner knew that a residential district was developing in the direction of the tract and thought that suburban development would increase the value of the land. He also knew that the tract of land was suitable for sale in smaller parcels than the whole for residential purposes. Petitioner's purpose in purchasing this land was to build a residence for himself thereon and rent the balance for truck purposes and for later disposal as its value increased. However, he was persuaded by a real estate agent to plat the land into 17 lots and offer them for immediate sale *35 with the exception of one to be retained for his residence. He thereupon had the title abstracted, the tract surveyed and platted and a plat placed of record known as the "Brady-Crest-Addition to the City of Davenport, Iowa." The real estate agent advertised the lots at his own expense, placed a billboard thereon advertising the tract, and agreed to sell the lots on a commission basis. From August 12, 1943, to December 31, 1943, petitioner sold 11 lots through said agent and during the following year sold the remaining six. In addition to the sales commission the petitioner paid for the surveying of the subdivision and the legal expenses attended upon drawing up the conveyances. The lots were wholly unimproved when petitioner purchased the tract and when the lots were sold. The petitioner himself had no license to sell real estate. He had never platted any property other than this one subdivision up to the time of the hearing. For some years prior to 1943 it had been petitioner's custom to invest his savings in improved property for rental purposes. A firm of realtors, who did not handle the above mentioned platting operation, advised him when to buy, procured tenants for his property, *36 looked after all repairs, collected the rents, and turned the proceeds over to petitioner. When, in the opinion of those realtors, this rental property could be sold advantageously, they so advised petitioner. Petitioner's transactions in real estate are as follows: Year
Purchases
Sales
1938-1942
10 houses
5 houses
1943
24-acre tract
11 lots
1944
2 houses
6 lots
1945
1 farm
5 houses
1946
1 house
1 farm
In addition to the above transactions petitioner purchased three or four vacant lots during the ten years prior to 1943 on one of which he built a home for rental purposes. The record is blank as to the amount of his rental income, the value of the house erected or the value of the farm. The value of the rental properties purchased ran from $4,000 to $10,000. In 1942 petitioner's wife was paid a salary of $2,600 and in 1943 a salary of $7,000. The sale price of the 11 lots sold in 1943 was $13,200 and the expense of sales $1,130. The cost allocable to the 11 lots was $4,923.71, leaving a net profit of $7,146.29. His taxable income from all other sources was $28,538.05. During the year 1943 the petitioner held the real estate involved *37 herein for sale to customers in the course of trade or business. Opinion The decision of this case involves the application of section 117 (a) (1), I.R.C.[1] The question presented is whether the lots sold by petitioner during 1943 were held by him "primarily for sale to customers in the ordinary course of his trade or business." This involves a question of fact which gains little light from a prolonged review of the authorities, each of which is bottomed on the particular circumstances therein involved. *38 The fact that the petitioner had a major business consisting of operating a jewelry store does not preclude an additional and different activity from also becoming a part of his business activities. See Oliver v. Commissioner, 138 Fed. (2d) 910, where the Court declared the taxpayer to be "engaged in two occupations - that of farming and that of selling lots." The crux of the question is as to whether the taxpayer is appreciably busy with the activity in question, or merely acting sporadically. See Snell v. Commissioner, 97 Fed. (2d) 891, where the Court says: "An occasional sale of land held as an investment is not such a business though profit results. The word, notwithstanding disguise in spelling and pronunciation, means business; it implies that one is kept more or less busy, that the activity is an occupation. It need not be one's sole occupation, nor take all his time. It may be only seasonal, and not active the year round. It ordinarily is implied that one's own attention and effort are involved, but the maxim qui facit per alium facit per se applies, and one may carry on a business through agents whom he supervises." The continuity and frequency *39 of the sales made in the questioned activity are important in determining whether or not it is a business activity. See Commissioner v. Boeing, 106 Fed. (2d) 305, where the Court says: * * * "From the cases it would appear that the facts necessary to create the status of one engaged in a 'trade or business' revolve largely around the frequency or continuity of the transactions claimed to result in a 'business' status." * * * On the other hand it is clear that the activity of the taxpayer may be through agents and employees as was indicated in the Snell case, supra. See also Welch v. Solomon, 99 Fed. (2d) 41, where the Court said: * * * "The personal attention which a taxpayer gives to a business is certainly not decisive as to whether a resulting profit is ordinary income or capital gain. One may conduct a business through others, his agents, representatives, or employers. The business is nonetheless his because he chooses to let others bear all of the burdens of management." Applying the law of the above cases to the facts at bar, it is evident that during the taxable year and for some years prior and subsequent thereto petitioner engaged in buying, *40 improving, selling or renting real estate for profit. He handled vacant lots, numerous dwellings, a farm, and a plat in the course of a relatively short period. He has not testified as to the amount of money involved in these transactions but we do know that in the taxable year he realized a profit from the sale of the platted lots alone amounting to one-fourth of his combined taxable income from his jewelry business and his rentals. His activities were spread evenly over the years and during 1943 and 1944 he sold 17 lots in 17 months. It is our conclusion that the determination of the Commissioner that the real estate lots were property held by petitioner primarily for sale to customers in the ordinary course of his trade or business is correct, and any gains realized from such sales is taxable as ordinary income and not as capital gain. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1) * * *↩